## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**WALTER L. CHANEY,**

> **Plaintiff,**

**vs.**                                    **Case No. 4:20-cv-00215-AW-MAF**

**JOHN W. BROOKS,**
**et al.,**

> **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff, Walter Lee Chaney, an inmate proceeding *pro se*, initiated this civil rights action, pursuant to 42 U.S.C. § 1983, and was granted leave to proceed *in forma pauperis*.[1] ECF Nos. 1, 5. Plaintiff later filed an amended complaint, ECF No. 8, which is the operative complaint. This Cause is currently before the Court upon Defendant's Motion for Summary Judgment accompanied by exhibits. ECF Nos. 49, 58. Plaintiff filed an unsigned "affidavit" and "Response."[2] ECF No. 54. After careful review, for the reasons

---

[1] Plaintiff recently paid the $350 filing fee. ECF No. 57.

[2] N.D. Fla. Loc. R. 5.1(E) provides that documents filed by *pro se* parties "must include a signature block with the party's handwritten signature, typed or printed name, street address . . ." Plaintiff did not sign the filing and there is no statement or signature verifying an "affidavit" under the penalty of perjury.

stated below, Defendant's Motion for Summary Judgment, ECF No. 49, should be GRANTED; and the case should be CLOSED.

## I.   Allegations of Plaintiff's Complaint, ECF No. 8.

Plaintiff sued two correctional officers, John W. Brooks and D. James, in their individual capacities, who were sergeants at Jefferson Correctional Institution where the alleged incident occurred. ECF No. 8, pp. 2, 6. Plaintiff claims that on January 17, 2017, at approximately 2:52 a.m., he was laying of the floor yelling in the Wing One bathroom of Golf Dormitory. Id., p. 5. According to Plaintiff, he was in a "lethargic" state from using drugs and was unaware of his surroundings. Id.

Defendant Brooks arrived and gave Plaintiff an order to cease his actions, but Plaintiff admits he did not comply. Id. Next, Defendant James arrived on the scene and shouted, "Inmate stop yelling or chemical agents will be applied successively." Id., p. 6. Defendant James ordered Plaintiff to submit to restraints and immediately administered chemical agents on Plaintiff. Id. Plaintiff claims he was "unresponsive and yelling" and could not "hear or comprehend anything or anybody." Id.

Plaintiff claims he did not pose any "imminent danger to Defendants." Id. Plaintiff alleges that while he was laying on the floor, "gagging for air and hyperventilating," Defendant James stood on his leg causing him pain. Id.

Then both Defendants began kicking Plaintiff without justification. Id. Other prison officers arrived on the scene and handcuffed and shackled Plaintiff. Id. Plaintiff believes he did not do anything to warrant the use of force. Id.

Plaintiff claims he suffered physical and psychological injuries, stress, depression, paranoia, and anxiety. Id. However, in the complaint, Plaintiff does not describe any type of physical injury or pain he suffered as a result. Id. Plaintiff seeks declaratory relief – "that the acts and omission[s] . . . violated Plaintiff's rights," compensatory and punitive damages, all costs involved with this suit, a jury trial, and any other relief the Court deems proper. Id., 7.

## II.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Accordingly, summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's

case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citations omitted).

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11th Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to present sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise show there are

material issues of fact which demand a trial. Fed. R. Civ. P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987). The trial judge, at the summary judgment stage, does not weigh the evidence but rather determines whether there is a genuine issue for trial: "if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin Cty., Ala. v. Purcell Corp., 971 F.2d 1557, 1563 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, supra).

The Supreme Court has stressed:

> [w]hen the moving party has carried its burden under rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

Matasushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Finally, "[w]hen

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### III.   Defendants Motion for Summary Judgment, ECF No. 49.

Essentially, Defendants argue Plaintiff fails to state a claim because their actions were necessary to get Plaintiff's disorderly behavior under control. See ECF No. 49, generally. Defendants admit they were assigned as internal security officers on the day of the alleged events. ECF No. 49, p. 4. According to Defendants, at approximately 2:45 a.m., Defendant Brooks entered the G-dorm to conduct a security check when he heard loud yelling coming from the Wing One bathroom. Id. When Defendant Brooks found Plaintiff laying on the floor yelling, he called for assistance. Id. Defendant James arrived at approximately 2:48 a.m. and assisted Defendant Brooks with applying hand restraints. Id. When they attempted to place leg irons on Plaintiff, he started kicking Defendants. Id. Then, Defendant James initiated "ICS" (the chemical spray). Id.

Sgt. Broderic Roberson, Sgt. Stanley Smith, and Captain Barbara Brown arrived at G-dorm at approximately 2:54 a.m. Id. Defendant James administered MK-4 to bring Plaintiff into compliance. Id. Afterward, Plaintiff

complied with all orders. Id., p. 5. Defendants maintain that at no time did they kick or stomp Plaintiff nor did they use any force more than was necessary to bring Plaintiff into compliance. Id., p. 4.

At approximately 2:56 a.m., Defendant Brooks and Sgt. Smith escorted Plaintiff to the infirmary. Id., p. 5. "Captain Brown authorized Officer Cuyler to record a post-reactionary chemical use of force." Id. Defendants maintain that Plaintiff was so combative and incoherent that he had to be handcuffed to the bed while being held by Defendant Brooks, Sgt. Smith, and Sgt. Roberson. Id. Plaintiff was taken in a wheelchair to a decontamination shower and later escorted to triage for a post-use-of-force physical. Id. Plaintiff had no injuries. Id.

The incident resulted in the issuance of five disciplinary reports against Plaintiff. Id., pp. 5-7. Plaintiff had a hearing on all reports, was found guilty of the offenses, and was sanctioned to disciplinary confinement. Id. Defendants maintain that Plaintiff cannot dispute the factual basis for the multiple disciplinary reports because he pled guilty or no contest, thus waiving all due process arguments. Id., pp. 10-11. Defendants insist that if Plaintiff's facts were proven as true, this would undermine and contradict the disciplinary decisions.

Defendants argue that Plaintiff cannot prove a constitutional violation because, as he stated during deposition, he is unable to remember the events. Id., p. 12. Plaintiff's inability to remember the incident and the fact that his allegations are blatantly contradicted by the record support a finding that no reasonable jury could believe his version of the facts. Id., pp. 12-17. According to Defendants, Plaintiff is not entitled to compensatory or punitive damages because he cannot show a physical injury, pursuant Hoever v. Marks, 993 F.3d 1353 (11th Cir. 2021). Id., pp. 17-18. Confinement cannot satisfy the physical injury requirement of § 1997e(e) under Logan v. Hall, 604 F. App'x 838, 841 (11th Cir. 2015). Id., p. 18. Under Smith v. Wade, 461 U.S. 30, 56 (1983), punitive damages are only available where there is an evil motive or intent or reckless or callous indifference to federally protected rights. Id., p. 19. Because Plaintiff cannot show a constitutional deprivation or actual physical injuries, his claims fail. Id.

Defendants argue Plaintiff does not sufficiently state a claim for excessive force because the use of force was reasonable and necessary to maintain or restore discipline as evident from the video and other evidence. Id., pp. 20-21. Plaintiff fails to state a claim where the use of force resulted in minor or *de minimis* injury. Id., pp. 21-23.

Finally, Defendants maintain that they are entitled to qualified immunity because they were acting pursuant to their authority as correctional officers, their conduct was reasonable under the circumstances, and they did not violate Plaintiff's constitutional rights. Id., pp. 23-24.

## IV.    Plaintiff's Response, ECF No. 54

Plaintiff's unsigned response to Defendants' motion for summary judgment largely restates the allegations made in his operative complaint. ECF No. 54. He was laying on the bathroom floor yelling; Defendant Brooks ordered him to stop; Defendant James warned that if he did not stop chemical agents would be used; and then the officers used excessive force. Id., pp. 2-3. But for the first time, in the response, Plaintiff alleges that before administering the chemical spray, Defendant James actually issued two warnings -- "a final order" that "chemical agents [would] be applied." Id., pp. 3, 13.

According to Plaintiff, no force was necessary because "no one was in a hazardous position," "no one was in imminent danger," and his actions were not violent. Id., pp. 7-8, 10, 12-13. Plaintiff admits that his behavior was "disorderly" before Defendant James arrived. Id., p. 10. Although Plaintiff originally stated in the complaint that he was lethargic, he now contends that he was "out of his mind, unresponsive" and did not comply with the orders to

cease his actions because he was "in a comatose state unable to respond or comply" because he was "under the influence of drugs." Id., pp. 9, 11, 15. Plaintiff insists that his failure to comply with officers' orders was not intentional. Id., p. 11. Plaintiff now claims he has no memory of the events since he "black[ed] out" and "was not conscious to know what took place." Id., pp. 7, 16.

Plaintiff argues his refusal to enter a plea to the disciplinary charges cannot be considered a guilty plea; therefore, he can dispute the factual claims supporting the reports. Id., pp. 4-5. Plaintiff says that there are witness affidavits which would corroborate his version of events. Id., p. 7. However, he provided no affidavits in support of the operative complaint or with his response to the Motion for Summary Judgment. See ECF Nos. 8, 54.

Plaintiff reasons that if he had kicked Defendants, they would have suffered injuries but did not have "even one scratch or scar." Id., p. 15. Also, he suggests that his version of the events must be true because otherwise he would have received an infraction report for disobeying orders. Id., p. 11. Plaintiff is mistaken; he received five disciplinary reports. ECF No. 49-1. In fact, one charged him with violating Rule 33-601.314(6-1), F.A.C., which prohibits disobeying an order. Id., pp. 7-8.

## V.    Discussion

### A. Claim of Excessive Force

"A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (emphasis and internal quotation marks omitted); Farmer v. Brennan, 511 U.S. 825, 828 (1994). "To prevail on such a claim brought under § 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." Townsend v. Jefferson Cty., 601 F.3d 1152, 1158 (11th Cir. 2010). See Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013) ("[d]eliberate indifference requires the following: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence").

To establish excessive force, the force must have been "sadistically and maliciously applied for the very purpose of causing harm." Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002). Evidence viewed in the light most favorable to the plaintiff must go "beyond a mere dispute over the reasonableness of the force used" and must "support a reliable inference of

wantonness in the infliction of pain." <u>Brown v. Smith</u>, 813 F.2d 1187, 1188 (11th Cir. 1987). "[A] good-faith effort to maintain or restore discipline' does not give rise to an Eighth Amendment violation . . . the malicious or sadistic application of force to cause harm does." <u>Thomas v. Comstock</u>, 222 F. App'x 439, 441-42 (5th Cir. 2007) (citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992)). However, once a prisoner has been subdued, "[t]he use of force must stop when the need for it to maintain or restore discipline no longer exists." <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1304 (11th Cir. 2002) (citation omitted).

Eighth Amendment claims based on *de minimis* uses of physical force are not cognizable unless they involve force that is "repugnant to the conscience of mankind." <u>Hudson</u>, 503 U.S. at 8. Moreover, although a lack of injury "is not conclusive about the presence or absence of constitutional violation [,] a lack of serious injury can illustrate how much force was actually used." <u>Walker v. City of Orlando</u>, 368 F. App'x 955, 956 n.1 (11th Cir. 2010) (internal citation omitted); <u>see also Stephens v. Broward Sheriff's Office</u>, 84 F. Supp. 3d 1327, 1337-38 (S.D. Fla. Dec. 10, 2014) (considering injury to the extent that it "inform[s] the Court as to the force used by the defendant during the course of the encounter."). While nominal damages may be appropriate in the absence of physical injury, that still requires the "violation

of a fundamental constitutional right." Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003).

Thus, a prisoner "who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (citing Hudson, 503 U.S. at 9). Such an encounter involving only *de minimis* force is "insufficient, as a matter of law, to state a constitutional violation." Bryan v. Spillman, 217 F. App'x 882, 886 (11th Cir. 2007). Not "every malevolent touch . . . gives rise to a federal cause of action." Hudson, 503 U.S. at 9. Indeed, federal courts "have routinely held that a single push, shove, punch, or blow . . . simply does not rise to constitutional dimensions." Neal v. Miller, 778 F. Supp. 378, 382 (W.D. Mich. 1991).

As explained below, the record, when considered as a whole, does not support Plaintiff's allegations of excessive force in violation of the Eighth Amendment.

### 1. The Incident Reports and Plaintiff's Deposition

According to the incident reports, at approximately 2:48 a.m., Defendant James responded to Defendant Brooks' request for assistance. ECF No. 49-2, p. 2. Defendant James found Plaintiff becoming disorderly in the Wing One bathroom. Id. Defendants Brooks and James were able to

place hand restraints on Plaintiff but he began kicking the officers when they attempted to place leg irons on him. Id., pp. 2, 4; ECF No. 49-5, pp. 4-5. Officer Morgan had passed the leg irons through the bathroom flap. ECF No. 49-2, p. 10. When Plaintiff began kicking, Defendant James initiated ICS. Id., p. 2.

At 2:50 a.m., Officer Morris entered the area followed by Sgt. Roberson, Sgt. Smith, and Capt. Brown at 2:54 a.m. Id. When Morris entered, Morgan observed Plaintiff kicking Defendants James and Books. Id., p. 10. Also, at approximately 2:54 a.m., Defendant James directed the MK-4 spray toward Plaintiff's upper body and face to bring Plaintiff into compliance. Id. Morgan stated he did not witness the actual chemical spray because he went to retrieve gloves from the officer station's cabinet. Id., p. 10. It appears from the reports that the chemical spray occurred just before the arrival of Sgt. Roberson, Sgt. Smith, and Capt. Brown. In his incident report, Sgt. Roberson stated that he did not see the chemical spray but found Plaintiff lying on the floor restrained; and he assisted in transporting Plaintiff to the infirmary. Id., p. 6. Sgt. Smith reported similarly. Id., p. 12. Afterward, Plaintiff complied with all orders. Id. At 2:56 a.m., Defendant Brooks and Sgt. Smith escorted Plaintiff to the infirmary. The description noted in the reports

of Plaintiff's escort to the decontamination showers is consistent with the video evidence described in Section 2 below. Id.

During deposition, Plaintiff testified that he "blacked out" after "smoking" what he thought was "a cigarette." ECF No. 49-4, pp. 9, 12. He stated he was yelling and did not comply and alleged Defendant James stomped on him. Id. However, Plaintiff admitted, "I can't, you know, really tell you what transpired verbatim because I was in and out of there." Id., pp. 9, 19. Plaintiff said he could only recall "smoking and falling out" and then the use of force. Id., p. 22. Plaintiff testified that "medical . . . never documented [his] injuries." Id., p. 10. Plaintiff testified that the excessive force was the "kicking and stomping on him." Id., p. 18. Plaintiff denied kicking any officer. Id., p. 22. According to Plaintiff, officers are not permitted to use force on an inmate without permission from the supervisor unless it was reactionary force. Id., p. 26.

Plaintiff testified that he had a "whole bunch" of sworn affidavits, or at least two, from inmates that corroborated his version of events. Id., pp. 22-23. Plaintiff admitted that none testified at his disciplinary hearing. Id., p. 24. Plaintiff insisted that he was injured during the incident but did not state what those injuries were only that he still has neck pain and numbness in the arm. Id., p. 28. It is worth repeating that, in his filings, Plaintiff did not allege any

particular injury resulting from the incident, did not mention any neck pain or numbness in the arm, nor did he provide any medical documentation, evaluations, or other evidence to support these claims.

Plaintiff fails to properly state a claim for an Eighth Amendment violation because the essence of his claims only question whether the amount of force used against him was reasonable. Overall, the evidence -- including Plaintiff's own statements -- supports Defendants' assertion that the force applied was an effort to maintain discipline and compliance and was not for a sadistic purpose or for the purpose of committing harm. The video evidence also supports a finding that there was no constitutional violation, as explained below.

### 2. The Video Evidence.

Defendants submitted three[3] DVDs containing video evidence of the post-use-of-force evaluations and treatment. ECF No. 58. The incident involving the use of force was not recorded nor was Plaintiff's transport from the bathroom to the infirmary. The clearest video of the events is found on

---

[3] The docket in this case incorrectly reflects that one DVD was "received and routed to MAF chambers." See ECF No. 58. The Clerk will be directed to correct the scrivener's error so that the docket reflects there are three DVDs.

Disc 2, File No. 00002.MTS, and Disc 3, File No. 00003 as recorded by the hand-held camera.[4]

The video on Disc 2 begins with Plaintiff laying on a gurney in the infirmary. Several officers kept Plaintiff physically restrained; one officer held his ankles while two officers held his arms. Plaintiff was surrounded by four male officers and Capt. Brown, a female officer. Another officer managed the hand-held camera. The time on the video purports to be 3:02 a.m., approximately ten minutes from the time the incident occurred. However, the clock on the wall shows 3:12 a.m., a difference of ten minutes. Plaintiff was alert and coherent.

Plaintiff was asked for his name and "DC number," but he would not respond. Plaintiff appeared to be coughing or wanting to spit and repeatedly asked for water. 00:00-8:00. Although Capt. Brown repeatedly told Plaintiff to stop fighting staff, he continued to try to sit up and spat in the officers' direction. Id. It appears that at one point Plaintiff vomited. Id. A medical provider gave Plaintiff water, but the video does not show that any physical examination was conducted during that time. Once the medical officer

---

[4] The videos on Disc 1 contain video of varying views from the jail's stationary cameras. These contain views of the hall of the unit where Plaintiff was taken for his decontamination showers. In the various videos there are sections that are inaudible or, alternatively, the video is pixelated or still. Therefore, the undersigned describes the events as evident in the video files located on Discs 2 and 3.

confirmed Plaintiff was clear for transport, Plaintiff was removed from the gurney and placed in a wheelchair without incident. 08:20. Capt. Brown indicated that because Plaintiff's behavior was erratic, a medical escort was necessary to assist in transporting Plaintiff to the showers. Id.

Officers wheeled Plaintiff outside into a separate building and placed him into a shower cell. 08:53–11:59. Plaintiff did not exhibit any resistance. Id. While in the shower cell, Plaintiff followed Capt. Brown's directions on how to remove his clothing and rinse off but, after approximately three minutes, the water shut off. 11:59-14:30. Capt. Brown reported that Plaintiff exhibited disorderly behavior earlier, Defendant James employed a chemical spray when Plaintiff did not comply with commands, and explained how Plaintiff was brought to the infirmary for examination. 15:19-16:45. The water never came back on -- the result of a malfunction. 14:30-23:17. Officers gave Plaintiff clothes, which he put on, and then walked him to another shower unit. 23:17-26:00. Capt. Brown repeated her report of the events. 25:15-30:00. Once Plaintiff finished the decontamination shower, he dressed himself, was handcuffed, and was taken to triage. 33:17-35:00. The triage door was closed but Plaintiff and the two officers can be seen through the glass door. 35:00. The conversation is inaudible.

The remainder of the Plaintiff triage visit can be viewed on Disc 3, File No. 00003. Again, the conversation between Plaintiff and the medic is inaudible. Plaintiff was eventually escorted by officers to cell #3104. 01:00. Again, Capt. Brown gave a report noting Plaintiff's disorderly conduct, Defendant James' use of chemical agents for failure to comply with orders, and described the post-use-of-force evaluations and decontamination showers. 03:00.

Three issues are significant concerning the videos: (1) Plaintiff is resistant to being restrained while in the infirmary, (2) he was coherent enough to follow all instructions, and (3) at no time does Plaintiff complain of any injury other than to repeatedly ask for water as related to the chemical spray. There is no evidence on video that Plaintiff was suffering from any physical injury. Plaintiff was able to undress, shower, and dress himself without any assistance. Plaintiff showed no physical limitations in movement, showering, or walking other than that which was inhibited by the restraints. Plaintiff was able to follow directives by officers and was not combative from the time they left the infirmary until the time he was eventually returned to his cell. As a whole, the evidence supports Defendants' version of events.

### 3. The Disciplinary Reports, ECF No. 49-1

The disciplinary reports obviously stem from the alleged use-of-force incident. First, DR# 103-170057 charged Plaintiff with violating Rule 33-601.314(9-17), Florida Administrative Code (F.A.C.), which prohibits disorderly conduct. ECF No. 49-1, p. 2. Pursuant to a no contest plea, Plaintiff was found guilty and received thirty days disciplinary confinement. Id. The second and third disciplinary reports, DR# 103-70058 and 103-70059, charged Plaintiff with violating Rule 33-601.314(1-15), F.A.C., which prohibits battery or attempted battery on a correctional officer. Id., pp. 4-6. For both, Plaintiff pled no contest, was found guilty, and was sanctioned with sixty days of disciplinary confinement. Id.

Contrary to Plaintiff's denial in his response, the fourth disciplinary report, DR# 103-170060 charged Plaintiff with violating Rule 33-601.314(6-1), F.A.C., which prohibits disobeying an order. Id., pp. 7-8. Plaintiff refused to enter any plea and, based on evidence presented at the hearing, was found guilty. Id. Plaintiff was sanctioned with thirty days of disciplinary confinement. Id.

Lastly, DR# 103-170091 charged Plaintiff with violating Rule 33-601.314(9-27), F.A.C., which prohibits the unauthorized use of drugs. Id., pp. 9-10. Plaintiff pled guilty and received forty days of disciplinary

confinement. <u>Id</u>. The details in the reports are consistent with Plaintiff's account of his condition at the time of the incident: that he was laying on the restroom floor yelling when Defendant Brooks found him, he did not comply with the orders to cease his actions, and he had glossy eyes and slurred speech. <u>Id</u>., p. 9.

Plaintiff did not appeal any of his disciplinary reports (<u>see</u> ECF No. 49-1, generally); and, in this action, he does not challenge the validity of the disciplinary reports. Plaintiff is not claiming any due process violations resulting from the disciplinary hearing, does not challenge the sentences he received, and is not seeking any habeas relief. In fact, Plaintiff's complaint does not challenge the factual basis of the disciplinary reports at all. For these reasons, Defendants' arguments that Plaintiff cannot dispute the factual basis of the disciplinary reports because he pled guilty or no contest are largely irrelevant. Plaintiff alleged that Defendants used excessive force by using a chemical spray and by kicking him and stomping on him when he failed to comply with their directives. <u>See</u> ECF No. 8, generally. The actions by Defendants are completely distinct from Plaintiff's guilty plea to having used drugs or his disorderly conduct that led to the use of force.

To the extent Defendants argue that if Plaintiff's operative facts were proven true it would necessarily undermine and contradict the disciplinary

decisions for battery on the officers, in this case, this is not necessarily so. In <u>Heck v. Humphrey</u>, the Supreme Court of the United States held that a state prisoner's claim for damages "is not cognizable under § 1983 . . . [if] a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. 477, 487 (1994). That is because challenges to a conviction or sentence are within the province of habeas corpus relief and not § 1983. <u>Id</u>. at 481. In <u>Edwards v. Balisok</u>, 520 U.S. 641, 643 (1997), the Supreme Court extended the holding in <u>Heck</u> to a prisoner's challenge to disciplinary proceedings. In that case, a prisoner's claim for "declaratory relief and money damages based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." <u>Edwards</u>, 520 U.S. at 648. "For <u>Heck</u> to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory." <u>Dyer v. Lee</u>, 488 F.3d 876, 884 (11th Cir. 2007). The inquiry asks, "whether it is possible that the facts could allow a successful § 1983 suit and the underlying conviction both to stand without contradicting each other." <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1193 (11th Cir. 2020).

The case of <u>Dixon v. Hodges</u>, 887 F.3d 1253 (11th Cir. 2018) is directly on point. There, the prisoner brought an excessive force claim against prison

officials for a use-of-force incident that also resulted in the prisoner receiving a disciplinary report for battery or attempted battery on a correctional officer. Hodges, 887 F.3d at 1238. The defendants moved for summary judgment arguing that the plaintiff's success would invalidate the disciplinary infraction. Id. The district court granted the motion, but the Eleventh Circuit reversed citing Dyer: "A prisoner may be punished for battery on a prison guard, and that prison guard may be held liable for using excessive force on the prisoner in subduing him; both may be true." Id. The same is true here. Plaintiff's excessive force claim would not undermine the disciplinary reports. For this reason, Defendants' argument on this basis fails.

Nonetheless, as stated above, Plaintiff fails to provide sufficient evidence to support his claims of excessive force in violation of the Eighth Amendment. Ultimately, without any evidentiary support and where the record, collectively, contradicts Plaintiff's version of events, his claims necessarily fail. See Earley, 907 F.2d at 1080. Plaintiff cannot rely solely on his complaint and other initial pleadings to contest Defendants' motion for summary judgment, which is supported by evidentiary material. Plaintiff provided no affidavits, depositions, or other evidence to show there are material issues of fact which demand a trial. Fed. R. Civ. P. 56(e); Coleman, 828 F.2d at 717. Plaintiff was disorderly – he admits he was disorderly and

did not comply with orders despite multiple warnings (one from Brooks and two from James). It became necessary for Defendants to use force to bring Plaintiff under control when he became combative. Furthermore, the record does not infer that Plaintiff suffered any injury that was more than *de minimus*. Plaintiff did not indicate that he suffered from any pain; was able to undress, dress, and shower; and walked without any difficulty. There is no medical evidence to suggest that Plaintiff suffered any injuries from the incident. Plaintiff simply does not make "enough of a showing that the jury could reasonably find" a result in his favor. <u>Walker</u>, 911 F.2d at 1577.

B. <u>Qualified Immunity</u>

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right." <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). The court considers: "whether the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established" at the time of the alleged transgression. <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009); <u>Keith v. Dekalb Cty</u>., 749 F.3d 1034 (11th Cir. 2014). In short, Plaintiff must show

that Defendant's actions violated a constitutionally protected right and the right was "clearly established" at the time.

Dismissal based on qualified immunity is proper "when the complaint fails to allege the violation of a clearly established constitutional right." St. George v. Pinellas Cty., 285 F.3d 1334, 1337 (11th Cir. 2002) (citing Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001). While the Court is required to accept the allegations in the complaint as true, once a defendant raises a qualified immunity defense, the burden of persuasion belongs to the Plaintiff. Id. The Court is not required to accept Plaintiff's legal conclusions as true.

As narrated above, Defendants' actions do not amount to a constitutional violation. Therefore, Defendants are entitled to qualified immunity. Plaintiff's accounting of the incident is blatantly contradicted by the record, so much so, that no reasonable jury could believe it. Thus, the Court cannot adopt Plaintiff's version of the facts for purposes of summary judgment. Scott, 550 U.S. at 380. There are no genuine issues as to any material fact; and the motion for summary judgment is properly supported. Accordingly, Defendants are entitled to summary judgment.

## VI.   Conclusion and Recommendation

For the reasons stated above, it is respectfully RECOMMENDED that Defendants' Motion for Summary Judgment, ECF No. 49, be GRANTED;

that the case be CLOSED; and that summary judgment be entered in favor of Defendants.

Finally, the Clerk is DIRECTED to correct ECF No. 58 to reflect that three DVDs were received as supporting exhibits to Defendants' Motion for Summary Judgment.

IN CHAMBERS at Tallahassee, Florida, on November  19  , 2021.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).